NATIONAL ADVERTISING CO.,
a Delaware corporation,
Plaintiff–Appellant,

v.

DEPARTMENT OF TRANSPORTATION OF the STATE OF COLORADO, Guillermo Vidal in his Official Capacity as Executive Director of Colorado Department of Transportation, and Casey P. Tighe, in his Official Capacity as a Hearing Officer in the Colorado Department of Transportation, Defendants–Appellees.

No. 95CA1874.

Colorado Court of Appeals,
Div. V.

Jan. 23, 1997.

Krassa, Kumli & Madsen, L.L.C., Robert F.T. Krassa, Shayne M. Madsen, Boulder, for Plaintiff–Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Michael E. King, Assistant Attorney General, Denver, for Defendants–Appellees.

Opinion by Judge TAUBMAN.

In this judicial review of final agency action, plaintiff, National Advertising Company (National), appeals from a judgment of the district court upholding a decision of defendant, Department of Transportation of the State of Colorado (DOT), which determined that three outdoor billboards owned by National were abandoned and had to be removed. We affirm.

National's three billboards were in existence prior to 1971 and, thus, were permitted

as "non-conforming advertising devices" pursuant to § 43–1–403(12), C.R.S. (1993 Repl. Vol. 17). On February 14, 1994, DOT sent notices of violation to National, asserting that its three billboards had been abandoned pursuant to a DOT rule which provides that signs left blank or displaying obsolete advertising materials for six months must be removed (six-month rule).

Subsequently, National requested an administrative hearing, and the ensuing hearing was the first held by DOT regarding outdoor advertising signs in at least fifteen years. At the hearing, testimony was presented that National had valid leases with the owners of the property on which the signs are situated, and had received income from the sale of advertising space on the signs at all relevant times. However, evidence was also presented that each of the signs was blank for a period greater than six months. DOT conceded that it could not prove National intended to abandon its three signs.

The hearing officer concluded that, although DOT had failed to prove National intended to abandon the signs, it did prove abandonment under DOT's regulatory definition of that term. The hearing officer also concluded that: "It is a reasonable exercise of [DOT's] delegated rule making authority to define abandonment to a time certain to allow for fair enforcement of the Outdoor Advertising Act."

The hearing officer also rejected National's argument that DOT was estopped from enforcing its abandonment regulation because it did not contact National prior to issuing a notice of violation, as it had allegedly done in the past. Based upon these findings, the hearing officer directed National to remove the signs within sixty days of his decision.

National then sought judicial review of the hearing officer's decision, and the district court affirmed the above legal conclusions of the hearing officer. National now appeals from this judgment in favor of DOT and two additional defendants, Guillermo Vidal, in his official capacity as executive director of Colorado Department of Transportation, and Casey P. Tighe, in his official capacity as a hearing officer in the Colorado Department of Transportation.

## I. Validity of "Abandonment" Regulations

■ National first contends that DOT cannot promulgate regulations which define "abandonment" without an element of intent because such a definition imposes stricter requirements than those authorized by the General Assembly. We disagree.

Any regulation which is inconsistent with or contrary to a statute is void and of no effect. *Miller International, Inc. v. Department of Revenue*, 646 P.2d 341 (Colo.1982). A regulation that is beyond the scope of a statute is in excess of administrative authority. *Travelers Indemnity Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300 (1976).

Section 43–1–415(1), C.R.S. (1993 Repl.Vol. 17) provides, in pertinent part, that DOT shall administer and enforce the provisions of the Outdoor Advertising Act (OAA) and shall promulgate and enforce rules, regulations, and standards necessary to carry out the provisions of the act including regulations relating to the maintenance and removal of nonconforming advertising devices.

However, § 43–1–415(4), C.R.S. (1993 Repl.Vol. 17) provides that DOT's rules and regulations shall not impose any requirements which are additional to or more strict than those imposed by the OAA.

Section 43–1–413(2)(a), C.R.S. (1993 Repl. Vol 17) provides that the right to maintain any nonconforming advertising device shall be terminated by abandonment of the nonconforming device. The OAA does not define abandonment. However, Department of Highways Regulation Rules VIII–A(3) and X–B, 2 Code Colo. Reg. 601–3, provide that a sign which is blank or displays obsolete advertising matter for a period of six months will be deemed abandoned and removed.

National asserts that the regulations are stricter than the statute because the statutory term "abandonment" includes an element of intent, whereas the regulations establish an irrebuttable presumption that a sign not used for six months is abandoned. We reject this argument.

The interpretation of one statute by reference to an unrelated statute is an unreliable

means of ascertaining legislative intent. *Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994). However, one statute may be interpreted in relation to analogous but unrelated statutes to show a general course of legislative policy. 2B N. Singer, *Sutherland Statutory Construction* § 53.05 (5th ed. 1992).

Accordingly, it is instructive to note that the General Assembly has used the term "abandonment" both with and without the element of intent. Thus, on occasion the General Assembly has defined the term "abandon" without an element of intent. *See* § 11–51–411, C.R.S. (1996 Cum.Supp.) (when licensed securities broker-dealer or sales representative cannot be located after reasonable search, securities commissioner may revoke license on grounds that license has been abandoned); § 12–64–115(3), C.R.S. (1991 Repl.Vol. 5B) ("abandoned" means to neglect or refuse to provide or perform legal obligations for care and support of animal); § 18–9–201(1), C.R.S. (1996 Cum.Supp.) ("abandoned" means leaving an animal without adequate provisions for proper care); § 38–22–109(7), C.R.S. (1982 Repl.Vol. 16A) (in context of mechanics' liens, "abandonment" means discontinuance of labor, work, services, and furnishing of materials for a three month period). But, in some statutes, intent is an element. *See* § 18–4–512, C.R.S. (1986 Repl.Vol. 8B) (to abandon motor vehicle means to leave it with intention not to retain possession of or assert ownership over it); § 18–13–112, C.R.S. (1986 Repl.Vol. 8B) (same definition used in context of vehicle containing hazardous waste).

■ The construction of statutes by administrative officials charged with their enforcement should be given deference by a reviewing court. This construction is entitled to even greater deference when the administrative interpretation is longstanding. When the General Assembly has reenacted or amended a statute, a failure to repeal the agency's interpretation is persuasive evidence that the administrative interpretation was intended by the General Assembly. *Hewlett-Packard Co. v. State*, 749 P.2d 400 (Colo.1988).

Here, it is DOT's responsibility to promulgate regulations relating to the maintenance and removal of nonconforming advertising devices, and the six-month rule was promulgated in 1983. In 1992, the General Assembly amended the OAA and added § 43–1–415(4), C.R.S. (1993 Repl.Vol. 17), which provides that DOT's rules and regulations shall not impose stricter requirements than those imposed by the OAA. In so doing, however, the General Assembly did not repeal DOT's six-month rule.

Moreover, the legislative history of § 43–1–415(4) reveals that its sponsor intended it to be a reaffirmation of existing law which prohibits regulations stricter than the corresponding enabling statute. Hearing on H.B. 1354 before the House, 58th General Assembly, Second Session (April 29, 1992); *see Travelers Indemnity Co. v. Barnes, supra.* Further, § 43–1–403, C.R.S. (1993 Repl.Vol. 17), which defines terms used in the OAA, was amended in 1996 and the term "abandonment" was not defined. *See* § 43–1–403(4), C.R.S. (1996 Cum.Supp.).

Thus, although the challenged regulation has been in existence for over ten years, the General Assembly has twice amended the OAA and failed to repeal DOT's interpretation of the term "abandon." This lack of action is indicative that the General Assembly has approved DOT's interpretation of that term. *See Hewlett-Packard Co. v. State, supra.*

Accordingly, we conclude that DOT did not exceed its authority in defining the term "abandonment," as used in the OAA and that, therefore, its six-month rule is consistent with the OAA and enforceable without evidence of an owner's intent to abandon a nonconforming advertising device.

## II. Equitable Estoppel

■ National next contends that DOT's failure to follow its past practice of contacting sign owners before the issuance of a notice of violation equitably estops it from removing National's signs. We disagree.

The doctrine of equitable estoppel is premised upon principles of fair dealing and is designed to prevent manifest injustice. The

following elements must be established to support a claim of equitable estoppel: the party to be estopped must know the facts and either intend the conduct to be acted on or so act that the party asserting estoppel must be ignorant of the facts, and the party asserting estoppel must rely on the other party's conduct with resultant injury. The reliance of the party seeking to benefit from the doctrine of equitable estoppel must be reasonable. *Committee for Better Health Care v. Meyer,* 830 P.2d 884 (Colo.1992).

Equitable estoppel may be available against a governmental agency to prevent manifest injustice. It is not, however, so freely invoked against governmental agencies as it may be against private persons. *Jafay v. Board of County Commissioners,* 848 P.2d 892 (Colo.1993).

Here, the record reveals that DOT occasionally telephoned National and on one occasion wrote it a letter to warn it of prospective enforcement of the six-month rule after the six-month period had elapsed. However, the record does not establish a DOT policy of providing such warnings to all sign owners prior to enforcement of the six-month rule. Further, National was aware of the six-month rule, and it is undisputed that its signs were left blank for six months.

We agree with the trial court and the hearing officer that National has not estab-lished that it was ignorant of facts upon which it reasonably could have relied. Accordingly, we conclude that DOT is not equitably estopped from enforcing the six-month rule as against National.

### III.   Burden of Proof

National next contends that DOT's decision must be reversed because the hearing officer erred in not requiring proof of abandonment of the sign by clear and convincing evidence. We disagree.

Since we have concluded that DOT was not required to prove intent and since National has conceded that its signs were left blank for six months, National's claims would fail even under a clear and convincing standard of proof. Thus, we agree with the trial court that the standard applied by the hearing officer is irrelevant.

Judgment affirmed.

MARQUEZ and RULAND, JJ., concur.