FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**June 25, 2025**

**Christopher M. Wolpert
Clerk of Court**

LE'ONSHA SCOTT,

    Plaintiff - Appellant,

v.

NATIONWIDE AGRIBUSINESS
INSURANCE COMPANY,

    Defendant - Appellee.

No. 24-1358

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:22-CV-02074-WJM-NRN)**

_____

Ben Norton of Law Offices of Ben Norton, PLLC (Nelson Boyle of The Paul Wilkinson
Law Firm, LLC, and Richard M. Crane with him on the briefs), Denver, Colorado, for
Plaintiff-Appellant.

Gary L. Palumbo (Peter M. Spiessbach with him on the brief), of Bayer & Carey, P.C.,
Denver, Colorado, for Defendant-Appellee.

_____

Before **HOLMES**, Chief Judge, **KELLY**, and **FEDERICO**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

    Plaintiff-Appellant, Le'Onsha Scott, appeals from the district court's order

granting summary judgment in favor of Defendant-Appellee, Nationwide Agribusiness

Insurance Company ("Nationwide"). II Aplt. App. 401–13. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

In April 2018, Ms. Scott sustained severe injuries in a car accident with Ellen Cahill. II Aplt. App. 401. Ms. Cahill admitted that she was at fault. Id. Ms. Cahill was insured under two policies. Id. at 401–02. First, Ms. Cahill insured her own vehicle — a 2018 Hyundai Ioniq — through a Hartford policy. Id. Second, and critical to this appeal, Ms. Cahill was insured under a Nationwide policy ("the Nationwide Policy" or "the Policy"). Id. at 402. Ms. Cahill was covered under the Nationwide Policy as a "resident relative" of the named insured — her son, John Duggan. Id.

The Nationwide Policy covered automobile liability "for damage or injury to others caused by your auto." I Aplt. App. 83, 86. The "Definitions" section of the Policy defines "your auto" as "the vehicle(s) described in the Declarations." Id. at 84. In turn, the "Declarations" section of the Policy designates two automobiles: (1) a 2009 Hyundai Sonata GI, and (2) a 2017 BMW 540xi. Id. at 80. The Policy does not designate Ms. Cahill's 2018 Hyundai Ioniq, which she was driving at the time of her collision with Ms. Scott. See id.; II Aplt. App. 402. Accordingly, Nationwide denied coverage for liability arising out of the collision because Ms. Cahill was not driving either of the vehicles designated under the Policy.[1] II Aplt. App. 402.

---

[1] The Policy contained an exception extending liability coverage to a limited class of vehicles not designated in the Policy, such as newly purchased vehicles and vehicles that the insureds operated while the designated vehicles were being repaired.

Although Ms. Cahill did not dispute her liability, she and Ms. Scott agreed to arbitrate causation and damages. I Aplt. App. 19. After arbitration, Ms. Scott was awarded $424,140.26 for her injuries, which was reduced to judgment in state district court. II Aplt. App. 402. The Hartford policy paid $25,000, but Nationwide declined to pay the balance. Id. Ms. Scott filed a declaratory judgment action against Nationwide in federal district court seeking indemnification for the balance of the $424,140.26 judgment. Id. Nationwide moved for summary judgment, arguing that it had no duty to indemnify because Ms. Cahill — although insured under the Policy as a "resident relative" — was not driving a vehicle designated by the Policy at the time of the collision. Id. at 402–03. Ms. Scott cross-moved for summary judgment, asserting that the Policy's provision extending liability coverage only to vehicles named therein was void as against Colorado public policy. Id. at 403.

The federal district court granted summary judgment in favor of Nationwide, denying Ms. Scott's cross-motion. Id. at 413. The district court reasoned that Colorado statutes and caselaw contemplated that insurers may exclude liability coverage based on whether a vehicle is specifically named in the policy. Id. at 403. Further, the district court was not persuaded by the cases Ms. Scott relied upon because they dealt with uninsured/underinsured motorists ("UM/UIM"). Id.

On appeal, Ms. Scott revives her argument that the Policy's provision extending coverage to only specified vehicles improperly limits liability coverage that is statutorily

---

I Aplt. App. 86–87. We need not discuss this exception because Ms. Cahill's 2018 Hyundai Ioniq does not fall within the limited class. Aplee. Br. at 4 n.3.

mandated under Colorado law.  Aplt. Br. at 3.  We hold that this limitation does not violate Colorado public policy and therefore affirm.

## Discussion

We review the district court's order granting summary judgment de novo.  Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC, 17 F.4th 22, 29 (10th Cir. 2021).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"In this diversity case, we apply Colorado law and interpret insurance policies as a Colorado court would."  Leprino Foods Co. v. Factory Mut. Ins. Co., 453 F.3d 1281, 1287 (10th Cir. 2006).  Thus, we also review de novo the district court's interpretation of the insurance policy and Colorado's insurance statutes.  Id.; Ward v. Allstate Ins. Co., 45 F.3d 353, 354 (10th Cir. 1994).  Colorado courts seek to ascertain and give effect to the legislature's intent by looking to the plain meaning of statutory language.  See Allen v. United Servs. Auto. Ass'n, 907 F.3d 1230, 1237 (10th Cir. 2018).  Under Colorado law, an insurance policy provision that dilutes, conditions, or limits statutorily mandated coverage violates public policy and is thus void and unenforceable.  DeHerrera v. Sentry Ins. Co., 30 P.3d 167, 173 (Colo. 2001) (en banc).  Comparatively, "'in the absence of statutory inhibition, an insurer may impose any terms and conditions in an insurance agreement consistent with public policy which it may see fit.'"  Allen, 907 F.3d at 1237 (quoting Chacon v. Am. Family Mut. Ins. Co., 788 P.2d 748, 750 (Colo. 1990) (en banc)).

**A.  The Nationwide Policy is not void as against Colorado public policy.**

This appeal turns on the interpretation of Colorado's motor vehicle insurance statutes. Colorado's statutory definition of "insured" includes "the named insured, relatives of the named insured who reside in the same household as the named insured, and any person using the described motor vehicle with the permission of the named insured." Colo. Rev. Stat. Ann. § 10-4-601(5). Nationwide concedes that Ms. Cahill is an "insured" under the Policy as a "resident relative" of the named insured — her son. Aplee. Br. at 31. Ms. Scott argues that because Ms. Cahill was an "insured," she was entitled to liability coverage which Nationwide wrongfully limited through the vehicle-based coverage exclusion. Aplt. Br. at 8–9. She asserts that the only "insureds" whose coverage can be limited based on the vehicle that they drive are those "using the described motor vehicle with the permission of the named insured," also known as "permissive users." Id. at 21; Colo. Rev. Stat. Ann. § 10-4-601(5). But Ms. Scott's arguments confuse what it means to be an "insured" and what it means to be entitled to liability coverage under the Policy.

In fact, a plain reading of Colorado's motor vehicle insurance statutes suggests that motor vehicle insurers may limit liability coverage such that it extends only to specified vehicles. Colorado's compulsory coverage statute requires motor vehicle owners to have "in full force and effect a complying policy . . . covering the said motor vehicle[.]" Colo. Rev. Stat. Ann. § 10-4-619(1) (emphasis added). A "policy" is defined as "an automobile insurance policy providing coverage for . . . [c]ollision . . . insuring a single individual, or husband and wife, or family members residing in the same

household, as named insured, <u>and under which the insured vehicles therein designated</u> are of the following types[.]" <u>Id.</u> at § 10-4-601(10) (emphasis added). And the coverage required in such policy includes "liability coverage for bodily injury and death <u>arising out of the use of the motor vehicle</u>[.]" <u>Id.</u> at § 10-4-620 (emphasis added). Relatedly, Colorado's Motor Vehicle Financial Responsibility Law, requires a "motor vehicle liability policy" to "designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby intended to be granted." <u>Id.</u> at § 42-7-413(1)(a). Tellingly, Ms. Scott cannot not identify any statutory provision which would require an insurer to extend liability coverage to insureds regardless of whether the vehicle they were operating at the time of a collision was named in the policy.

Colorado caselaw supports the conclusion that motor vehicle liability coverage may be limited to specified vehicles. As the Colorado Supreme Court explained, "liability coverage applies whenever the injury is causally related to a conceivable <u>use of the insured vehicle</u>." <u>DeHerrera</u>, 30 P.3d at 175 (quotations omitted) (emphasis added); <u>see also</u> <u>Farmers Ins. Exch. v. Anderson</u>, 260 P.3d 68, 77 (Colo. App. 2010) ("[S]ection 10-4-601(5) specifically <u>allows</u> liability coverage to be predicated upon using a motor vehicle that is described in the policy."). And Colorado courts have repeatedly recognized that public policy favors allowing insurers to extend liability coverage only to specified vehicles. <u>See</u> <u>Apodaca v. Allstate Ins. Co.</u>, 255 P.3d 1099, 1101 (Colo. 2011) (en banc) (explaining that insurance premiums are calculated "based on factors specific to [a] vehicle" such as year, make, and model); <u>Mid-Century v. Robles</u>, 271 P.3d 592, 595 (Colo. App. 2011) (noting that the practice of excluding coverage for vehicles which are

6

not specifically insured under the policy is common, "legally sound," and "supported by policy" (quotations omitted)).

Ms. Scott argues that this court's decision in Pacheco v. Shelter Mutual Insurance Co., 583 F.3d 735 (10th Cir. 2009), is dispositive. Aplt. Br. at 12. But Pacheco is not on point. First, unlike Pacheco, this case does not involve an insurance policy provision attempting to narrow the class of statutorily mandated "insureds." 583 F.3d at 739–40. In Pacheco, the court noted that a Colorado statute defined "resident relatives" as "relatives of the named insured who reside in the same household as the named insured[.]" Id. Nevertheless, the Pacheco policy sought to narrow the class of "resident relatives" to those who were "related to [the named insured] by blood, marriage, or adoption and who is a resident of and actually living in [the named insured's] household, provided neither the relative nor the relative's spouse owns, in whole or in part, an auto." Id. at 737. The policy provision in Pacheco was void because it narrowed the class of statutorily mandated relatives who could be an "insured." Id. at 740. The Nationwide Policy makes no such attempt to narrow the class of resident relatives — and Nationwide even concedes that Ms. Cahill is an "insured" as a resident relative. Aplee. Br. at 31.

Second, Pacheco was decided in the distinct context of UM/UIM coverage. 538 F.3d at 737–38. Colorado's UM/UIM coverage statutes are person-oriented and provide a point of contrast to liability coverage which, as detailed above, is vehicle-oriented. See Colo. Rev. Stat. § 10-4-609(1)(a)(1) (requiring coverage "for the protection of persons insured under the policy" (emphasis added)). And focusing UM/UIM coverage on individuals rather than vehicles also makes good policy sense as UM/UIM laws are

7

meant "to ensure the widespread availability of protection to persons against financial losses caused by financially irresponsible motorists." Apodaca v. Allstate Ins. Co., 232 P.3d 253, 259 (Colo. App. 2009), aff'd, 255 P.3d 1099 (Colo. 2011). We decline to extend Pacheco's reasoning beyond the UM/UIM context.

Ms. Scott's remaining arguments are similarly unpersuasive. She first argues that the Colorado legislature could have written a vehicle-based exception into the statutory scheme, but it did not. Aplt. Br. at 30. Relatedly, she asserts that the relevant Colorado motor vehicle insurance statutes do not address the instant issue because they focus on requirements for consumers, not requirements for insurers. Id. at 32–33. Both arguments fail because "in the absence of statutory inhibition, an insurer may impose any terms and conditions in an insurance agreement consistent with public policy which it may see fit." Allen, 907 F.3d at 1237 (quotations omitted). Again, Ms. Scott has failed to identify statutory provisions or caselaw that lend compelling support to her arguments.

Finally, because we affirm, we deny Ms. Scott's request for an award of her appellate costs. Aplt. Br. at 40; Fed. R. App. P. 39(a)(2); 10th Cir. R. 39.

AFFIRMED.